CHEHARDY, Judge.
Defendant, Elmer S.E. Loudenback, through his provisional curator, appeals a district court judgment in favor of plaintiff, Ruth Mills Loudenback, wife of Elmer S.E. Loudenback, and against the defendant, decreeing an absolute divorce a vinculo matri-monii between plaintiff and defendant, granting plaintiff custody of the couple’s four minor children and ordering the defendant to continue paying child support on their behalf.
The defendant argues on appeal that divorce should not have been granted to the plaintiff under LSA-R.S. 9:301, because defendant had been declared incompetent well before the filing of the separation petition.
The record reveals that on March 8, 1978 plaintiff filed a petition seeking a separation a mensa et thoro between herself and the defendant, alleging acts of cruelty perpetrated by the defendant upon herself and her children. On February 13, 1980, plaintiff amended her petition seeking, in the alternative, an absolute divorce under the provisions of LSA-R.S. 9:301.
At the trial on the merits of the case counsel for the defendant testified that Mr. Loudenback was arrested in December of 1977 and charged with aggravated rape. He also stated that in February of 1978 the defendant was found incapable of understanding the nature of the proceedings against him and was committed to East Louisiana State Hospital where he has resided since that time. He added Mr. Loud-enback has never been free since the time of his December 1977 arrest.
Mrs. Loudenback testified she has not lived with her husband since the time of his arrest and has only seen him through court proceedings. On cross-examination she admitted in letters her husband has said he wants to live with her. She also said that although since 1978 it would have been physically impossible to live with her husband, she told the court she will never live with him.
*74 LSA-R.S. 9:301 states: “When the spouses have been living separate and apart continuously for a period of one year or more, either spouse may sue for and obtain a judgment of absolute divorce.”
In the case of Wadsworth v. Wadsworth, 328 So.2d 719 (La. App. 4th Cir. 1976), however, cited by the defendant, the court did state at 721:
“At the outset it must be noted that in none of the affidavits or pleadings is there an assertion that as of the time Mr. and Mrs. Wadsworth first separated she was insane. They speak only of mental problems prior to the judgment of separation and mental incompetency at the time of trial. Unless Mrs. Wadsworth was insane or incompetent when the separation occurred in February, 1970, the separation was voluntary and Mr. Wadsworth was entitled to a judgment even if she became insane or incompetent subsequent to their separation. Clark v. Clark, 215 La. 835, 41 So.2d 734 (1949).”
In Wadsworth, however, appellants sought to annul a judgment of separation granted previously in favor of Mr. Wads-worth. When dealing with a separation proceeding, therefore, the provisions of LSA-C.C. art. 138(9) and (10) are controlling. These portions of the article specifically state they apply when the husband and wife have voluntarily lived separate and apart.
The provisions of LSA-R.S. 9:301, however, as noted above, do not mention the word “voluntarily” at all. This distinction between the two articles was aptly noted in the case of Sciortino v. Sciortino, 188 So.2d 224 (La. App. 4th Cir. 1966), where the court said, discussing LSA-C.C. 138(9), at 230:
“The inclusion of the word ‘voluntarily’ which does not appear in LSA-R.S. 9:301, or any of its predecessor statutes providing for divorce after living separate and apart for a specified time is materially significant.
“It is our opinion that it requires a mutual acquiescence in the living apart during the time required. It must be a mutually voluntary act, and it is not enough that it be voluntary only as to one of the parties. We are unable to find any case from the appellate courts of this State interpreting the meaning and significance of the word ‘voluntarily’ as used in Article 138(9), but we do find support for our opinion in Pascal, Legislation Affecting the Civil Code and Related Subjects, 17 La.L.Rev. 22 (1956), wherein he said:
'* * * The important words in the statement of the new cause for separation are “when the husband and wife have voluntarily lived separate and apart.” (Emphasis added). Grammatically and lexicographically this legislation requires that the separate living be mutually voluntary. R.S. 9:301 does not have the word “voluntarily” in its text and the judicial interpretation has been that the separate living must be the result of a voluntary or intentional act on the part of at least one of the parties, but not necessarily of both, to terminate the conjugal life. [Citing Otis v. Bahan, [209 La. 1082, 26 So.2d 146] supra, and Leveque v. Borns, [174 La. 919, 142 So. 126] supra.] Thus the living separate and apart required by the new legislation, if construed according to the normal meaning of words in the English language, is more limited than that required by R.S. 9:301 as interpreted.’ ”
The court also followed that rationale in the case of Miller v. Miller, 378 So.2d 1040 (La. App. 2d Cir. 1979), and stated there is no requirement under LSA-R.S. 9:301 that the separation be voluntary on the part of both husband and wife, but that it is sufficient it be voluntary with respect to only one of the parties.
Clearly from the testimony of Mrs. Loud-enback at the trial on the merits her separation from her husband is completely voluntary on her part. Therefore, for this and the other reasons assigned the district court judgment is affirmed.
AFFIRMED.